IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
STEVELIN F. STEELE,            )
                               )
     Plaintiff,                )
                               )
v.                             )       1:23-cv-00816
                               )
FREEDOMROADS, LLC, d/b/a       )
CAMPING WORLD OF CONCORD,      )
                               )
     Defendant.                )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff Stevelin F. Steele has brought this action against Defendant FreedomRoads, LLC ("FreedomRoads") pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17. (Doc. 10.) Before the court is the motion of FreedomRoads to compel arbitration. (Doc. 21.) Steele has filed multiple responses in opposition (Docs. 27, 30, 37), and FreedomRoads has filed a reply (Doc. 31). FreedomRoads has also filed motions to strike Steele's second and third responses.[1] (Docs. 32, 38.) For the reasons that follow, the motion to compel arbitration will be granted and this case will be stayed.

---

[1] FreedomRoads correctly notes that the submission of multiple responses violates this district's Local Rules. (See Docs. 32, 38.) However, because of Steele's pro se status and in the interest of most fulsomely weighing his arguments, the court will consider all three responses.

## I. BACKGROUND

Steele, who appears pro se, worked for FreedomRoads from May 2021 until his discharge in July 2022. (Doc. 22 at 8; Doc. 22-1 at 2.) On May 19, 2021, during the employment onboarding process, Steele digitally acknowledged and signed the FreedomRoads <u>Associate Handbook and Acknowledgement</u>, which contained an Arbitration Agreement ("Agreement"). (Doc. 22 at 8; Doc. 22-1 at 2.) Specifically, Steele registered for his electronic onboarding using a unique username – in this case, SSTEELE0112 – and password. (Doc. 22 at 9; Doc. 22-1 at 3, 40.) The onboarding system then presented him with the handbook, which noted on its first page:

> By clicking the box below, you (a) acknowledge that you have received, read, and understood the Associate Handbook, and (b) agree that your clicking the box is your electronic signature and to use an electronic signature to sign the Acknowledgement. Your electronic signature is as legally binding as an ink signature.

(Doc. 22 at 8-9; Doc. 22-1 at 33.) The handbook prompted Steele to click an "Acknowledgement" box positioned directly above text that similarly read, "By clicking Acknowledge Policy, I acknowledge that this serves as the electronic representation of my signature, including legally binding contracts – just as wet ink on a paper signature would." (Doc. 22 at 9; Doc. 22-1 at 3, 33.)

Steele's acceptance of the Agreement constituted a mandatory condition of his employment with FreedomRoads. (Doc. 22 at 10;

2

Doc. 22-1 at 4.) And Steele's personnel file with the electronic onboarding system demonstrates that he entered into the Agreement at precisely 11:15 a.m. on May 19, 2021. (Doc. 22 at 9; Doc. 22-1 at 4, 38, 40.) Indeed, Steele does not dispute that he checked the appropriate box to acknowledge FreedomRoads's arbitration policy during his employment onboarding. (See generally Docs. 27, 30, 37.)

In relevant part, paragraph 2 of the Agreement explains that the arbitration provisions cover "all claims or controversies, whether or not arising out of employment or termination of employment that would constitute a cause of action in court," including claims "based on . . . Title VII of the [C]ivil Rights Act of 1964." (Doc. 22 at 10-11, 16; Doc. 22-1 at 7.) Moreover, the Agreement provides:

> [A]ny and all claims or disputes described in paragraph 2 that Associate may have now or in the future with or against FREEDOMROADS, LLC, Inc., any parent or subsidiary of, or any Company affiliated with FREEDOMROADS, LLC, Inc. or any of its subsidiaries, and the officers, directors, managers, Associates, or agents of any of them acting in their capacity as[] such . . . may be heard by a neutral mediator.

(Doc. 22 at 10; Doc. 22-1 at 7.) According to the Agreement, if mediation fails, "the claim or dispute shall be submitted to arbitration." (Doc. 22 at 10; Doc. 22-1 at 7.)

Here, Steele bypassed any opportunity to mediate the dispute and instead filed this action in September 2023. (Doc. 1.) The

3

Magistrate Judge then provided Steele with thirty days to file an amended complaint on the proper forms (Doc. 4), and Steele timely filed his amended complaint in May 2024 (Doc. 5). Because Steele still had not clearly set out his claims or named the proper defendants, the Magistrate Judge gave Steele another opportunity to file an amended complaint. (Doc. 9.) Steele finally filed the operative amended complaint in June 2024. (Doc. 10.)

In November 2024, the Magistrate Judge ordered Steele to deliver to the Clerk's Office a summons for service on FreedomRoads. (Doc. 13.) The summons was issued in March 2025 (Doc. 14), and FreedomRoads's counsel filed a notice of appearance in May 2025 (Doc. 16). Less than one month later, FreedomRoads filed the present motion to compel arbitration. (Doc. 21.) The motion includes a sworn declaration written by Michael Waddington, who has served as the Director of Human Capital at FreedomRoads since 2017. (Doc. 22-1 at 1.) In that capacity, Mr. Waddington has familiarity with the company's "general business operations, hiring process, and maintenance of personnel records and data," and he has "access to personnel and other business records" related to FreedomRoads's employees. (Id. at 1-2.) Steele then filed his response in August 2025 (Doc. 27), which the court deemed timely despite Steele's delay of more than two and a half months (Doc. 29). FreedomRoads thereafter filed a reply (Doc. 31), and the motion is now ready for decision.

4

## II. ANALYSIS

Steele appears pro se. Thus, his complaint and filings are "not . . . scrutinized with such technical nicety that a meritorious claim should be defeated." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). But the liberal construction of a pro se litigant's filing does not require the court to ignore clear defects, Bustos v. Chamberlain, No. 09-1760, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), or to become an advocate for the pro se party, Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that "[d]istrict judges are not mind readers"). Moreover, pro se parties are expected to comply with applicable procedural rules. See Chrisp v. Univ. of N.C.-Chapel Hill, 471 F. Supp. 3d 713, 715-16 (M.D.N.C. 2020) (requiring pro se plaintiff to comply with the Federal Rules of Civil Procedure).

In opposition to FreedomRoads's motion, Steele argues that no valid arbitration agreement exists or, if it did, that the claims fall outside the scope of the agreement, the agreement is unconscionable, or FreedomRoads waived its right to arbitrate.[2] (Doc. 27 at 1; Doc. 30 at 2; Doc. 37 at 2.) The court will address

---

[2] Many arbitration agreements contain delegation provisions, which require an arbitrator rather than a court to determine threshold arbitrability questions such as scope, unconscionability, and waiver. See Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 68-69 (2019); Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68-70 (2010). Here, however, the Agreement does not appear to contain any such provision, and neither party argues otherwise.

5

each argument in turn.

### A. Whether the Parties Agreed to Arbitrate

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., establishes "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings and compel arbitration in accordance with the agreement's terms." Murray v. United Food & Com. Workers Int'l Union, 289 F.3d 297, 301 (4th Cir. 2002) (citations omitted); see also 9 U.S.C. §§ 3-4. However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). As such, the court must determine whether parties have a valid and enforceable agreement to arbitrate. Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 234 (4th Cir. 2019).

"Whether an agreement to arbitrate was formed is . . . a question of ordinary state contract law principles." Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC, 993 F.3d 253, 258 (4th Cir. 2021). Here, as FreedomRoads correctly asserts, North Carolina law governs the contract formation dispute pursuant to the doctrine of lex loci contractus. (Doc. 22 at 9.) "Under North

6

Carolina law, a valid contract 'requires offer, acceptance, consideration, and no defenses to formation.'" Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001) (quoting Koltis v. N.C. Dep't of Hum. Res., 480 S.E.2d 702, 704 (N.C. Ct. App. 1997)). Moreover, "contracting parties 'must assent to the same thing in the same sense.'" Austin v. Experian Info Sols., Inc., 148 F.4th 194, 207 (4th Cir. 2025) (quoting Boyce v. McMahan, 208 S.E.2d 692, 695 (N.C. 1974)).

The burden to establish that a binding arbitration agreement exists rests with the party seeking to compel arbitration. Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., 867 F.3d 449, 456 (4th Cir. 2017). The movant must demonstrate the following:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). Generally, any ambiguity regarding the scope of the arbitrable issues should be resolved in favor of arbitration. Moses H. Cone, 460 U.S. at 24-25; Wachovia Bank, Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006).

To determine whether an arbitration agreement exists, a court

7

essentially applies the summary judgment standard to assess whether there is a genuine dispute of material fact regarding the formation of the arbitration agreement. Rowland, 993 F.3d at 258; Berkeley, 944 F.3d at 234. Once the movant has met its burden, the nonmovant must affirmatively demonstrate with specific evidence that there is a genuine dispute of material fact requiring trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); see also Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 352 n.3 (4th Cir. 2001) (holding that a trial on the existence of an arbitration agreement is inappropriate where the party opposing arbitration fails to unequivocally deny that an arbitration agreement has been made). In making its determination, "the court is entitled to consider materials other than the complaint and its supporting documents." Berkeley, 944 F.3d at 234 (citing Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 86 (4th Cir. 2016)).

Here, Steele asserts that he never assented to the terms of the arbitration agreement. He contends that FreedomRoads has failed to meet its burden of proving the existence of a valid agreement because it "ha[s] not provided a signed enforceable arbitration agreement binding" Steele. (Doc. 27 at 1.) Moreover, without citing any legal authority, he argues that "courts consistently hold that click-through acknowledgements or unsigned policy manuals" do not constitute mutual assent. (Doc. 37 at 2.)

8

FreedomRoads responds that it has put forth undisputed evidence demonstrating the process by which Steele electronically signed the Agreement as part of his employee onboarding. (Doc. 31 at 2-3.)

Steele argues that he did not "knowingly or voluntarily" agree to arbitrate (Doc. 30 at 2), but he does not dispute that he clicked the above-described "Acknowledgement" box, which purported to create a legally binding contract "just as wet ink on a paper signature would." Despite Steele's contention that courts disfavor click-through acknowledgements, the reality is that "[c]ourts . . . generally find that when a website provides clear and reasonably conspicuous notice that there are contract terms available by scrolling down or clicking a hyperlink, the user is on reasonable notice of those terms even if she never reads them." Austin, 148 F.4th at 208 (alterations in original) (quoting Dhruva v. CuriosityStream, Inc., 131 F.4th 146, 153 (4th Cir. 2025)). Moreover, "[t]he signer of a document is charged with full knowledge of its contents and with assent to the terms contained therein." Armstrong v. Duke Univ., No. 04CV01206, 2006 WL 213952, at *4 (M.D.N.C. Jan. 27, 2006) (first citing Biesecker v. Biesecker, 302 S.E.2d 826, 829-30 (N.C. Ct. App. 1983); and then citing Martin v. Vance, 514 S.E.2d 306, 309-10 (N.C. Ct. App. 1999)). Thus, because Steele clicked the box to acknowledge that he "received, read and understood" the handbook, which contained

9

the relevant Agreement, he manifested assent to the Agreement's terms.

### B. Whether Any Defense Applies Despite Steele's Manifested Assent

Steele first contends that his claims fall outside the scope of the Agreement because such agreements are strictly construed, and any "ambiguity must be resolved against compelling arbitration." (Doc. 27 at 1; Doc. 30 at 2; Doc. 37 at 2.) But, as FreedomRoads correctly counters, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24; see also Mey v. DIRECTV, LLC, 971 F.3d 284, 292 (4th Cir. 2020) ("The heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." (quoting Levin v. Alms & Assocs., Inc., 634 F.3d 260, 266 (4th Cir. 2011))). Moreover, no ambiguity exists in this case where the Agreement expressly includes the claims at issue – namely, claims based on Title VII and arising out of Steele's employment or the termination of his employment. (See Doc. 22 at 10-11; Doc. 22-1 at 7.) Therefore, Steele's claims clearly fall within the scope of the Agreement.

Next, Steele argues that the Agreement is unconscionable because of its "boilerplate, one-sided provisions" and its application to civil rights claims. (Doc. 27 at 1; Doc. 30 at 2;

Doc. 37 at 2.) But the FAA "applies with equal force to employment agreements providing for the arbitration of discrimination claims brought under Title VII of the Civil Rights Act." Ashford v. PricewaterhouseCoopers LLP, 954 F.3d 678, 683 (4th Cir. 2020). Moreover, the "party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." Nazarova v. Duke Univ., 16CV910, 2017 WL 823578, at *5 (M.D.N.C. Mar. 2, 2017) (quoting Tillman v. Com. Credit Loans, Inc., 655 S.E.2d 362, 369 (N.C. 2008)). Yet as FreedomRoads rightly asserts, Steele has alleged no procedural unconscionability such as "fraud, coercion, undue influence, misrepresentation, [or] inadequate disclosure." See id. (quoting King v. King, 442 S.E.2d 154, 157 (1994)). Nor has he provided evidence of substantive unconscionability through "one-sided provisions," as the Agreement requires both parties to arbitrate any disputes. (See Doc. 22-1 at 7.) Accordingly, there is simply no basis to find that the Agreement is unconscionable.

Finally, Steele asserts that FreedomRoads has waived its right to arbitrate by actively litigating this case in federal court. (Doc. 27 at 1.) But then in Steele's third response to the motion to compel arbitration, he decries FreedomRoads's "attempt to rush this case into private arbitration." (Doc. 37 at 2.) In fact, FreedomRoads filed its motion to compel arbitration less than one month after its counsel filed a notice of appearance

11

in this case. It has not even filed a responsive pleading to the amended complaint at this point. Thus, FreedomRoads has not undertaken any action that could plausibly constitute "the intentional relinquishment or abandonment of" its right to arbitrate. See Morgan v. Sundance, Inc., 596 U.S. 411, 417 (2022). Rather, any apparent delay has only resulted from Steele's repeated difficulties in filing a proper complaint, serving a summons on FreedomRoads, and filing a response to the motion to compel arbitration.

In sum, FreedomRoads has put forth sufficient evidence to demonstrate that Steele entered into a valid and enforceable agreement to arbitrate this dispute when he completed his employment onboarding process. Because Steele has not provided any evidence to create a genuine dispute of material fact on whether FreedomRoads may now compel arbitration pursuant to the parties' Agreement, the court will grant FreedomRoads's motion.

### C. Whether to Stay or Dismiss the Action

FreedomRoads asks that the court either dismiss or, alternatively, stay the case pending arbitration. (Doc. 22 at 7.) On the other hand, Steele never directly addresses whether the case should be dismissed or stayed in the event the court compels arbitration. Notably, upon granting a motion to compel arbitration of all claims, a court only lacks discretion to dismiss the suit "[w]hen a federal court finds that a dispute is subject to

12

arbitration, <u>and a party has requested a stay of the court proceeding pending arbitration</u>."  <u>Mod. Perfection, LLC v. Bank of Am., N.A.</u>, 126 F.4th 235, 244 (4th Cir. 2025) (quoting <u>Smith v. Spizzirri</u>, 601 U.S. 472, 475-76 (2024)).  Nevertheless, in light of Steele's pro se status, the court will stay the case pending arbitration.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that FreedomRoads's motion to compel arbitration (Doc. 21) is GRANTED, this matter is REFERRED to arbitration in accordance with this memorandum opinion and order, and the case is STAYED in the interim.  The parties are DIRECTED to provide a report to the court every 90 days as to the status of the arbitration.

                                    /s/   Thomas D. Schroeder
                                    United States District Judge
October 27, 2025